ANNIE SCHAUFELE

*v.*

CHARLES BANSCHER et ux., et al.

[Submitted December 26th, 1913.   Determined February 3d, 1914.]

1. While the powers of the officers of a building and loan association are defined by its by-laws, by which the members are bound, the association may adopt a course of dealing founded on its business necessities or conveniences, which may be made the basis of duties and liabilities by it not defined by the by-laws.

2. After defendant had paid out all of his indebtedness to a building and loan association, except $87, due on a loan, and two judgments against him, the association agreed to make a new loan for $800, and a warrant was drawn in favor of defendant for the full amount of the new loan, and was presented to defendant by the secretary and solicitor for endorsement, after which it was retained by the secretary and solicitor, so that the amount due on the prior loan and the other prior liens would be paid out of the $800 and the remainder paid to the defendant, but the secretary instead wrongfully appropriated the amount to his own use. The prior lien was secured by an absolute deed to certain property, as well as by a pledge of the stock.—*Held*, that it was not contemplated that the warrant should be delivered to defendant absolutely before the amounts due the association on the prior loan, &c., were paid, so that it cannot be claimed that defendant, by endorsing the warrant to the secretary and solicitor, made the latter his agent for receiving the proceeds of the warrant, so as to entitle the association to treat the deed held by it to secure the prior loans as a lien to also secure the subsequent loan of $800.

On final hearing on bill, answers and cross-bill, replications and proofs.

*Mr. Joseph J. Summerill,* for the complainant.

*Mr. David O. Watkins,* for the defendants and cross-complainants Charles Banscher and Emma Banscher and defendant Edward G. Miller.

*Mr. Austin H. Swackhamer,* for the defendant and cross-defendant the Paulsboro Loan and Building Association.

LEAMING, V. C.

In March, 1899, defendant Charles Banscher (who is also a cross-complainant herein) borrowed from defendant Paulsboro Loan and Building Association $950. To secure that loan Banscher subscribed for shares of stock of the association and assigned the shares as collateral security, and also conveyed to the association certain real estate then owned by him. This conveyance, though in form an absolute deed of conveyance, was admittedly intended as a mortgage to secure the loan. It was at that time the custom of the association to secure its loans by deeds of conveyance instead of by mortgages. The entire trans-

action was the usual building association plan of a loan, to be repaid by monthly payments of interest and dues until the pledged stock should mature and discharge the loan.

In the fall of 1910 the withdrawal value of the Banscher stock, when credited to him, left his indebtedness to the association but $87.10. It was then determined by him and the association that he should be privileged to borrow from the association $800, the new loan to be secured by new stock, to be issued to him and pledged to the association in the usual manner and also by a new mortgage on the same real estate executed to secure the new loan. At that time the custom of the association to take absolute deeds of conveyance to secure loans had changed and bonds and mortgages were used for that purpose. Accordingly, and as a part of the plan to consummate the new $800 loan, a deed was executed by the association to Banscher for the real estate the legal title to which was then in the association and a bond and mortgage securing the payment of $800 was made by Banscher to the association. These instruments were held by one Adamson, who was secretary and solicitor of the association, pending the settlement, and have never been finally delivered or recorded. Certain indebtedness of Banscher also existed at the time which it was necessary to have paid before the proposed $800 loan could be consummated as planned; that indebtedness consisted of the balance of $87.10 which remained due to the association after crediting to Banscher the withdrawal value of his old stock and two judgments which had been theretofore entered against Banscher, one for $294.13, the other a docketed judgment for $47.41. These two judgments were liens on Banscher's land subsequent and subject to the lien of the deed which the association held to secure its original loan. A warrant or order was then drawn in favor of Banscher for $800, the amount of the proposed loan. The warrant was signed by the president and secretary of the association and accepted by the treasurer. This warrant was by Adamson—the secretary and solicitor of the association—presented to Banscher for his endorsement and retained by Adamson to the end that the prior liens above enumerated could be paid by Adamson out of the amount represented by the warrant and the balance be then paid to Banscher. In-

stead of pursuing that course Adamson appropriated the proceeds of the warrant to his own use, except as to $100, which amount he subsequently paid to Banscher.

The present controversy arises from the conflicting interests of the association, the judgment creditors and Banscher. The association contends that Banscher by endorsing the warrant for $800, which was payable to his order, and intrusting Adamson with its possession, made Adamson his agent and made possible the defalcation of Adamson, and must, in consequence, be charged as having received the proceeds of the warrant. It is, therefore, urged that the deed which the association holds must be treated as a first lien to secure not only the small balance remaining unpaid on the original loan, but also the subsequent loan of $800. It is pointed out in behalf of the association that among the duties prescribed by the by-laws for the secretary and solicitor no duty is found which contemplated the use of a warrant by such officers to satisfy prior liens and pay to the borrower only the balance remaining.

While it is well settled that the powers of the officers of a building and loan association are defined by its by-laws, and that the members are bound by the by-laws, these principles cannot be regarded as of universal application. A building association may appropriately adopt a course of dealing founded on its business necessities or conveniences which will be made the basis of its duties and liabilities. See *Manchester Building and Loan Association* v. *Beardsley, 72 N. J. Eq. 714.* The present case is, in my judgment, one of that nature. Had the warrant or draft which was issued been intended for unconditional delivery to the borrower and delivered to him for his use, it is reasonably clear that he could not have collected the money represented by it and then repaid all or a part of the money to the solicitor or secretary of the association for the purpose of having such officer discharge the prior liens without thereby making such officer his agent for that purpose. In such case it may be assumed that the default of the officer would have been the borrower's loss. But the transaction was of an essentially different nature. The warrant or draft which was issued by the association was not intended for unconditional or absolute de-

livery to the borrower. The loan of $800 was under the existing circumstances necessarily accompanied by a distinct understanding that the money should be applied first to the payment of the amount then due the association and then to the discharge of the judgments; the balance only was to go to the borrower. The loan was to be secured by a first lien on the real estate. The business method adopted by the association for the accomplishment of that purpose was a warrant, in form an accepted draft, payable to the order of the borrower, for the entire amount of the loan, whereas only the balance already referred to was intended for the borrower. The business methods adopted by the association did not contemplate the delivery of the warrant to the borrower; the business necessities of the association required the draft to be retained under the control of its officers to whatever extent it should be found necessary to satisfy the prior charges before the borrower should receive his money. That was the plan and manifest purpose of the transaction, otherwise separate warrants would have been drawn for the several amounts which were intended for the several parties. But the method adopted by the association was that of a single warrant, and by that method it became the duty of the solicitor and secretary of the association to control the application of its proceeds. That warrant was not money; it was merely the means for procuring the money and it was never surrendered to the borrower. The endorsement of the warrant by the borrower at the behest of the officers of the association was no more than a submission, on his part, to the requirements of the association. To charge this illiterate borrower, who did no more than submit to the business methods required by the association, with liability upon the theory that he constituted the officers of the association his agents by the act of endorsing the warrant to enable the business of the association to be conducted in accordance with its established methods, is contrary to the plainest principles of justice.

I will advise a decree declaring the deed held by the association to be held as security for the payment of the original loan, and defining the priority of liens of the respective parties as follows: First, a lien in favor of defendant Paulsboro Loan and

Building Association for $87.10 and interest.   Second, a lien of the judgment held by complainant for $294.13 and interest. Third, a lien of the judgment held by defendant Edward G. Miller for $47.41 with interest.   Fourth, a lien in favor of defendant Paulsboro Loan and Building Association for $100 and interest.